UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                  Case No. 15-20471
                                                     Hon. Mark A. Goldsmith

vs.

ANTHONY DAVID DEWBERRY,

       Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT ANTHONY DAVID DEWBERRY'S RENEWED MOTION FOR COMPASSIONATE RELEASE (Dkt. 45)

Defendant Anthony David Dewberry pleaded guilty to possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and being a felon in possession of a firearm, in violation of 21 U.S.C. §§ 922(g)(1) and 924(a)(2). See Judgment (Dkt. 27). Judge John Corbett O'Meara sentenced Dewberry to 98 months' imprisonment on May 19, 2009. Id.[1] Dewberry, age 42, began serving his custodial sentence his sentence on August 11, 2016. He is now incarcerated at FCI Milan. Dewberry's projected release date, which takes into account credit for time already served, is May 4, 2023.

On January 9, 2021, Dewberry filed the instant renewed motion for compassionate release, arguing that his health conditions—which include prediabetes, hypertension, and obesity–render him higher risk for severe illness from COVID-19 (Dkt. 45). The Government opposes Dewberry's motion, arguing that his underlying health conditions are not recognized as "high risk" factors by the Centers for Disease Prevention and Control ("CDC") and, in any event, the 18 U.S.C.

---

[1] This case was reassigned to the undersigned on June 23, 2020.

§ 3553(a) factors do not favor release. For the reasons that follow, the Court denies Dewberry's motion.

## I. LEGAL STANDARD

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003-1004 (6th Cir. 2020). Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all those requirements are met, the district court "may reduce the term of imprisonment," but need not do so. 18 U.S.C. § 3582(c)(1)(A). However, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. "Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id. Although courts are not required to consider § 1B1.13 in ruling on compassionate release

motions brought directly by inmates, Elias, 984 F.3d at 519, § 1B1.13 still provides a useful working definition of "extraordinary and compelling reasons," and thus may be consulted to "guide discretion without being conclusive," United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (citing Gall v. United States, 552 U.S. 38, 49-50 (2007); Kimbrough v. United States, 552 U.S. 85 (2007)).

## II. ANALYSIS

Dewberry argues that his underlying health conditions—which include his BMI, prediabetes condition, and hypertension—render him particularly vulnerable to contracting COVID-19.

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the CDC.[2]

The parties dispute whether any of Dewberry's health conditions are identified as high-risk factors by the CDC.[3] Prediabetes is not listed as a high-risk factor.[4] Dewberry's other health conditions—obesity and hypertension—fall into a grey area. Although severe obesity, which is

---

[2] See People at Increased Risk for Severe Illness (CDC): https://perma.cc/F55H-7DHA.

[3] See People with Certain Medical Conditions (CDC): https://perma.cc/U554-5TAN.

[4] See id.

defined as a Body Mass Index ("BMI") over 40, is listed as a high-risk factor, Dewberry's BMI is roughly 30.7. The CDC has identified BMIs in the 30-40 range as conditions that "might" increase an individual's risk of severe illness from COVID-19.[5] Likewise, hypertension is listed as a condition that "might" increase an individual's risk of severe illness from COVID-19.[6]

The Court need not determine whether Dewberry's health conditions present "extraordinary and compelling" circumstances warranting release, as the § 3553(a) factors are dispositive in this case. See Elias, 984 F.3d at 519. Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses and the need to promote respect for the law, and the need to protect the public from further crimes by the defendant. Dewberry has a lengthy criminal history consisting of five felony convictions for delivery or manufacture of cocaine and three felony convictions for possession of cocaine. In each instance, Dewberry violated probation or parole, sometimes several times. As a result, Dewberry's record demonstrates a notable disrespect for the law, casts serious doubt on whether Dewberry would follow supervised release conditions or social distancing protocols, and suggests that Dewberry would continue to commit drug-related crimes harming the public if released at this time. Further, because Dewberry started serving his sentence on August 11, 2016, he has only served approximately 54 months of his 98-month sentence. Releasing Dewberry after serving only slightly over half of his sentence would not promote respect for the law. It is also worth noting that the facility at which Dewberry is currently incarcerated, FCI Milan, has only thirteen total

---

[5] See id.

[6] See id.

inmate confirmed cases of COVID-19,[7] which is a relatively low number as compared to the case numbers at other facilities and in light of the fact that the facility houses a total of 1,250 inmates.[8]

Although Dewberry acknowledges that the crime for which he is currently incarcerated was "serious," he argues his conduct was "non-violent." Mot. at 17 (Dkt. 45). However, selling drugs while possessing a firearm indicates that Dewberry was prepared to use violence to protect himself, his drugs, and his drug proceeds. The nature and circumstances of his offense thus weigh towards denying release. Dewberry argues that he committed the offense to get proceeds to fuel his drug addiction but has since made steps towards self-improvement while incarcerated. The Court commends Dewberry's efforts to address his addiction, as well as the clear disciplinary record he has maintained while incarcerated. However, Dewberry's post-conviction actions do not undo the seriousness of his offense. Moreover, to the extent Dewberry raises his post-conviction conduct to suggest he would comply with supervised release conditions and not present any danger to the public, his lengthy criminal history and repeated parole and probation violations indicate otherwise. For these reasons, the § 3553(a) factors weigh against granting Dewberry's renewed motion for compassionate release.

### III. CONCLUSION

For the reasons stated above, Dewberry's renewed motion for compassionate release (Dkt. 45) is denied.

Dated: February 5, 2021  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[7] See COVID-19 Cases (BOP): https://perma.cc/EXS3-X69N.  
[8] See FCI Milan (BOP): https://perma.cc/Y9Z4-26AW.